DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Ottawa County Court of Common Pleas which granted summary judgment to plaintiff-appellee, United States Construction Corporation ("USCC"), in its action to quiet title to a strip of land hereinafter known as the disputed road. The court further granted summary judgment to defendants-appellants, Danbury Township, Trustee John C. Englebeck, Trustee David M. Hirt and Trustee Dianne M. Rozak, on appellee's claims of trespass and slander of title. From that judgment, appellants now raise the following assignments of error:
 "1. THE COURT BELOW ERRED IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT AND DETERMINING THAT THE DISPUTED PORTION OF DANBURY NORTH ROAD, AKA TOWNSHIP ROAD 136, TRAVERSING APPELLEE'S PROPERTY WAS A PRIVATE ROAD WHERE THE PLEADINGS AND EVIDENCE COGNIZABLE PURSUANT TO OHIO CIVIL RULE 56 OVERWHELMINGLY ESTABLISHED THE PRESENCE OF ALL OF THE ELEMENTS REQUIRED FOR THE CREATION OF A PUBLIC TOWNSHIP ROAD BY PRESCRIPTION.
 "2. THE COURT BELOW ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT QUIETING ITS TITLE TO THE DISPUTED ROAD ON THE BASIS OF ITS UNSUPPORTED AND UNSUP-PORTABLE CONCLUSION THAT THE PUBLIC USE OF THE ROAD WAS BY PERMISSION OF APPELLEE'S PREDECESSOR IN TITLE RATHER THAN ADVERSE USER."
The undisputed facts of this case are as follows. In 1860, an ancestor of Roy Bauman became the record owner of Lot 20, Section 4, Danbury Township, Ottawa County, Ohio. That property stayed in Bauman's family until Roy Bauman sold most of it to USCC in 1999. In 1885, Lawrence Kalb, the record owner of Lot 21, Section 4 (the "Kalb property"), the lot immediately east of and adjacent to Lot 20, and others petitioned the Ottawa County Commissioners for the establishment of a county road in Danbury Township. The Ottawa County Commissioners approved the petition and on April 10, 1886, a county road was established with the following legal description:
 "Commencing about 10 Rods S.E. of the South West corner of John Baumans land on the County Road along the Bay Beach in Lot 20[,] Section 4[,] Danbury Township[,] Ottawa County[,] Ohio[.] Thence north west on John Baumans land to his west line, thence north on said line about 75 Rods[.] Thence in a northwesterly direction across the marsh on Lot 20 to the south west corner of H.H. Lullmanns land on the line between Lots 19 20[.] Thence north about 50 Rods to intersect the so-called Lammers road the point of termination."
That road has since been known as Township Road 136, Danbury Road North and Kalb Road ("T.R. 136"). Based on its legal description, T.R. 136 starts approximately 165 feet southeast of the southwest corner of the Bauman property and runs northwest from the starting point for approximately 165 feet, then north along the western border of the Bauman property for approximately 1,237 feet, then in a northwesterly direction until it terminates at Lammers Road, also known as County Road 225.
Connecting to T.R. 136 lies the road that is the subject of this case (the "disputed road"). The disputed road picks up where T.R. 136 begins but curves northeasterly through the Bauman property and parallel to and along the Sandusky Bay shoreline, ending in Lot 21 approximately 700 feet beyond its connection to T.R. 136. There was no evidence submitted in the proceedings below that established when this road was originally built or by whom. Nevertheless, appellants contend that the disputed road is part of T.R. 136 and, therefore, a public road.
Documents submitted in support of the motions below establish the following history of the disputed road. An 1874 Hardesty Atlas map of Danbury Township shows a road (the "shoreline road") which runs parallel to and along the Sandusky Bay shoreline through Lot 21. The shoreline road appears to dead end at the southern border of Lots 20 and 21. Thereafter, in 1886, T.R. 136 was created as explained above. Next, a 1900 Hardesty Atlas map of Danbury Township shows both T.R. 136 and the shoreline road. On this atlas map, the two roads appear to connect to form a large "U" shape, with the right side of the "U" being the shoreline road, the left side of the "U" being T.R. 136, and the bottom of the "U" running through the Bauman and Kalb properties. The bottom of the "U" is the disputed road. The next map in the record is a 1912-1913 map of a ditch improvement project. That map depicts T.R. 136 and the disputed road but does not depict the shoreline road. No other map or plat from this date on submitted in this case depicts the shoreline road.
In 1961, the Danbury Township Trustees submitted to the Director of Highways a certification of the number of miles in the Danbury Township highway system. In that certification .83 miles represents T.R. 136. In her affidavit filed in the court below, Rhonda Botti, the clerk of Danbury Township, attested that .83 miles is the distance from T.R. 136's junction with County Road 225 to its dead end on the Kalb Farm property, thereby including the disputed road. Subsequently, in 1972, a flood damaged the Bauman property, including the disputed road. Roy Bauman testified at his deposition that he repaired the flood damage himself, including the road bed, and was reimbursed by the United States government after the U.S. Army Corp of Engineers approved the repairs. Bauman further testified that in approving the repairs, the Army Corp of Engineers drew a map and inspected the property. No evidence of that map or inspection was submitted in the proceedings below.
In 1984, the Danbury Township Trustees approved the use of a Community Development Block Grant to elevate the pavement on T.R. 136. The plan/survey of the repavement project submitted in the proceedings below states that the project is for the south end of T.R. 136. It is not clear from that survey, however, that the disputed road was included in this project. Nevertheless, Roy Bauman did testify that sometime around 1985, the disputed road was paved. Prior to that time, Bauman stated, the disputed road was simply covered with oiled gravel. He further testified, however, that he always considered the disputed road to be his property, that he paid taxes on his entire property which included the disputed road, and that during the entire 75 years that he has lived on the land, the disputed road has only serviced one home on the Kalb Farm property and a seasonal cottage on that same property. Consistent with his testimony, the tax plat maps for the years 1993 and 1998, which were submitted as evidence below, do not show the disputed road.
In August 1998, Roy Bauman and other property owners living in the vicinity of T.R. 136 filed a petition with the Ottawa County Commissioners to vacate a portion of the public road legally described as follows:
 "Commencing at the intersection of Danbury Station Rd. #225 and Danbury North Road #136; thence south in the west line of said Lot 20, Section 4, approximately 925 feet to a curve in the road; thence southeasterly through the lands of Paula Rahnenfuehrer, a distance of approximately 1400 feet to the west line of lands owned by Roy A. Bauman for the point and place of beginning; thence South in the line between the said lands of Rahnenfuehrer and Bauman, approximately 1200 feet to the north line of the Con Rail Railroad; thence southeast along said railroad approximately 200 feet to a curve in the road; thence southeast and northeast following the meandering of said road as built and occupied, approximately 700 feet to a point opposite the barn on the property owned by the Kalb family now in Trusteeship and there to terminate."
Accordingly, the petition sought the vacation of the disputed road as well as the portion of T.R. 136 that runs along the western border of Bauman's property. The petition was filed by the property owners at the request of Gregory Spatz, the president of USCC, in contemplation of the sale of a portion of Bauman's property to USCC. On October 22, 1998, the Ottawa County Commissioners passed Resolution No. 98-73 denying the petition.
On February 1, 1999, an application for administrative approval of the subdivision of a 2.9980 acre parcel of Lot 20, Section 4, was filed with the Ottawa Regional Planning Commission. While Bauman had not yet sold the property to USCC, the application names Roy Bauman as the "grantor" and Gregory Spatz as the "grantee." The application sought to subdivide a parcel, known as Parcel A, into four lots. The disputed road runs through the lower portion of Parcel A. On February 4, 1999, the Ottawa Regional Planning Commission approved the subdivision of Parcel A.
On December 10, 1999, Roy and Matilda Bauman sold a portion of Lot 20, Section 4, to USCC. Through the sale, the Baumans conveyed to USCC Parcel A, the 2.9980 acre parcel described above, Parcel C, a 28.4918 acre parcel, and an ingress, egress and utility easement. The Baumans retained a 2.2332 acre parcel, Parcel B, upon which their home is located. Parcels A and B are adjacent to each other, with Parcel A sitting east of Parcel B. Parcel C is adjacent to and north of Parcels A and B. The disputed road runs through the south end of Parcels A and B along the shoreline and is included in the easement conveyed to USCC by the Baumans.
On December 26, 2000, USCC filed a complaint in the court below to quiet title to the disputed road. USCC named as defendants Danbury Township and trustees John C. Englebeck, David M. Hirt and Dianne M. Rozak. The complaint alleged that on February 23, 2000, the township trustees passed a resolution claiming an ownership interest in and to T.R. 136, including the disputed portion running through the easement and appellee's property.[1] The complaint further alleged that the disputed road is not a dedicated road and has never been recorded as a public right of way; that the road is a private road which the Baumans allowed the township to use as a bus turnaround; and that the township claims rights to the road by adverse possession and/or prescriptive easement. The complaint then asserted that the township had not acquired title to the disputed road by adverse possession and/or prescription but that the township's purported interest in the road constituted a cloud on appellee's title to its property. Appellee therefore sought a declaration that it is the sole and exclusive owner of the disputed road. In addition to its claim to quiet title, appellee asserted claims for trespass and slander of title.
Subsequently, appellee filed an amended complaint which added as a party defendant the Bayshore Land Company, the owner of property, formerly known as the Kalb Farm property, adjacent to appellee's property and into which the disputed road dead ends.
On March 28, 2001, appellants filed a motion for summary judgment supported by the affidavit of Rhonda Botti and the exhibits attached thereto. Appellants asserted that they were entitled to judgment as a matter of law on all of appellee's claims. On the claim to quite title, appellants asserted that the disputed road was established by the Board of Commissioners of Ottawa County and had not been abandoned. As to the claims for trespass and slander of title, appellants asserted that they were immune from liability under R.C. Chapter 2744, the Political Subdivision Tort Liability Act. In response, appellee filed its own motion for summary judgment and response to appellants' motion. Appellee asserted that it was entitled to judgment as a matter of law on its claim to quiet title because no township road had ever been established, dedicated or accepted on the disputed road running along appellee's easement and through appellee's property. Appellee supported its motion with the affidavits of Gregory Spatz and Daniel J. Cook, P.S., and the exhibits attached to those affidavits. Thereafter, appellants submitted the deposition of Roy Bauman in support of its claim for summary judgment.
On August 23, 2001, the trial court filed a decision and judgment entry granting USCC summary judgment on its claim to quiet title and granting appellants summary judgment on the trespass and slander of title claims. The court found that it was undisputed that when the Ottawa County Commissioners created T.R. 136 in 1886, they did not include in the legal description of that road the road in dispute in this case. Accordingly, Danbury Township could not claim rights to the road under statutory or common law dedication. The court further found that Danbury Township did not acquire rights to the road by prescription because the township's use of the road was never adverse to the Baumans. Because the township did not acquire title to the disputed road by either dedication or prescription, the court held that USCC held title to the road. With regard to the trespass and slander of title claims, the court held that appellants were entitled to immunity under R.C. Chapter 2744 due to the intentional nature of the torts alleged. Subsequently, the court filed a stipulated judgment entry which recognized that all of appellee's claims against the Bayshore Land Company were determined by the court's summary judgment rulings. The court therefore dismissed the case in accordance with its summary judgment rulings.
Appellants now challenge the trial court's judgment with regard to appellee's claim to quiet title. Because the two assignments of error are interrelated, they will be discussed together. Appellants assert that the trial court erred in granting appellee summary judgment on appellee's claim to quiet title because evidence presented in the proceedings below supported appellants' claim that the disputed road had become a public road by prescription. Appellants no longer assert that the disputed road was part of T.R. 136 as originally built in 1886. Rather, appellants assert that the public's open, notorious, adverse, continuous use of the disputed road for more than 21 years has given the township rights in the road by prescription.
In reviewing a ruling on a summary judgment motion, this court must apply the same standard as the trial court. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Moreover, the moving party is required to "specifically delineate the basis upon which summary judgment is sought * * *." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus. Once the moving party sets forth specific reasons for summary judgment, the nonmoving party bears a reciprocal burden to produce evidence on any element essential to his case for which he bears the burden of proof at trial. Celetox Corp. v. Catrett (1986), 477 U.S. 317, 322-323.
It is undisputed that appellee holds the record title to the disputed road. Nevertheless, it is well-established in Ohio that public roads and streets may be established by prescription. Railroad Co. v. Village ofRoseville (1907), 76 Ohio St. 108; Smith v. Krites (1950), 90 Ohio App. 38. "One who claims an easement by prescription has the burden of proving by clear and convincing evidence all the elements essential to the establishment thereof." McInnish v. Sibit (1953), 114 Ohio App. 490,490. To establish a public right of way by prescription, "the user must be under a claim of right by the public, adverse to the owner, and continued without substantial interruption or change" for a period of 21 years. Smith, supra at 42. That is, the use must be open, notorious, adverse, and continuous for a period of 21 years. The lower court held that because Bauman had permitted Danbury Township to maintain the road and to use the road as a school bus turnaround, the township's use of the road was never adverse to Bauman and, accordingly, the township did not acquire rights to the road by prescription.
The trial court's finding and appellants' claim that appellee's predecessor in title, Roy Bauman, allowed the township to use the road as a school bus turnaround is perplexing. Appellee's amended complaint asserts that prior to appellee's purchase of the easement, Roy Bauman gave Danbury Township permission to use the road exclusively as a bus turnaround. In their answer to the amended complaint, appellants denied that allegation. The record reveals that the property had been in the Bauman family from 1886 until Roy Bauman sold a substantial portion of it to appellee in 1999. Roy Bauman testified that the disputed road had been a part of his property for as long as he could remember and that he always considered it his property. He further stated that no one from the township ever asked if they could use the road, they simply used it. Nevertheless, he did not state how the township used the road and he never testified that the road was used as a school bus turnaround. Rather, when asked if anyone from the township asked for his permission to use the property for the purposes of a road or turnaround he answered "no." He further testified that during the 75 years that he has lived on the property, the disputed road has only served one home on the Kalb property and one cottage on his property, although he also testified that he felt he was doing a public service by allowing the township to use the road. Given this testimony, it is impossible to conclude how or for how long the township used the disputed road. Absent such evidence, the township cannot establish that its use of the private road was continuous for a period of 21 years.
Other evidence submitted in the case below does not support appellants' claim that the disputed road has become a public road by prescription. The atlases and ditch improvement project map simply show roads. They do not identify the roads as public or private. Moreover, there is no evidence of a public use of the road that would give the public rights to the road by way of prescription.
The earliest evidence that the township claimed rights to the road is the 1961 certification of township mileage for Danbury Township which includes the disputed road as part of the total mileage for T.R. 136. Nevertheless, when the disputed road was damaged in a 1972 flood, Bauman himself repaired the damage with the approval of the Army Corp of Engineers. He was subsequently reimbursed for the costs of the repairs by the United States government. R.C. 5535.01(C), which has been in effect since 1953, provides that the board of township trustees shall maintain all public roads within its township. Accordingly, at least as late as 1972, the township treated the disputed road as Bauman's property. It therefore appears that over the years, the township treated the disputed road as Bauman's property when it was beneficial to the township to do so, and treated it as township property when it was beneficial to the township to do so.
R.C. 5535.01(C) further provides that "[t]his section does not prevent the board of township trustees from improving any road within its township." In 1985 the township paved and therefore improved the disputed road. This action, however, was within the prescriptive period. There is no evidence in the record below that the township maintained the disputed road before this time. Absent evidence of the township's adverse use of the disputed road before 1985, the 1985 paving does nothing to establish appellants' claim that the road became township property by prescription.
Accordingly, the township failed to present evidence that it continually used the road adversely to Bauman's interests for 21 years or more. That is, appellants presented no evidence as contemplated by Civ.R. 56(C) as to how the disputed road was used by the public or for how long. In an action to quiet title, the party claiming a right of ownership over the title owner by way of prescription has the burden of proof. McInnish, supra; Whitford v. MGM Limited (Sept. 6, 1995), Medina App. No. 2382-M. Although Bauman's petition to vacate a public road and his application for a parcel split demonstrate some recognition on his part of the township's interest in his property, there is no evidence in the record as to when that interest began. To prove that the disputed road had become a public road by prescription, the township was required to present evidence that it had adversely used that road for at least 21 years. There is no such evidence in this case.
Because the undisputed facts establish that appellee holds the record title to the disputed road and that appellants failed to present evidence that the road had become a public road by prescription, appellee was entitled to judgment as a matter of law and the trial court did not err in granting summary judgment to appellee on its claim to quiet title. Accordingly, both assignments of error are not well-taken.
On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Melvin L. Resnick, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] No evidence of this resolution was submitted in the proceedings below. Although appellants did not deny the passage of the resolution in their answer to the complaint, they asserted that the resolution speaks for itself and no further response is required.